**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **WILLIE REED** | § | **PLAINTIFF** |
| | § | |
| | § | |
| **v.** | § | **Civil No. 1:18cv405-HSO-JCG** |
| | § | |
| | § | |
| **RIVERBOAT CORPORATION OF** | § | |
| **MISSISSIPPI** | § | **DEFENDANT** |

<u>**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANT RIVERBOAT CORPORATION OF
MISSISSIPPI'S MOTION [54] FOR SUMMARY JUDGMENT**</u>

BEFORE THE COURT is Defendant Riverboat Corporation of Mississippi's

Motion [54] for Summary Judgment. Plaintiff Willie Reed alleges he suffered from

discrimination and retaliation in violation of Title VII of the Civil Rights Act of

1964, 42 U.S.C. §§ 2000e – 2000e-17, and 42 U.S.C. § 1981 while employed at

Defendant's Golden Nugget Hotel and Casino. After due consideration of the

record, the parties' briefs, and relevant legal authority, the Court is of the opinion

that Defendant Riverboat Corporation of Mississippi's Motion [54] for Summary

Judgment should be granted in part and denied in part. Plaintiff Willie Reed's

claims for retaliation under Title VII and 42 U.S.C. § 1981 will proceed to trial. His

remaining claims will be dismissed.

1

# I. BACKGROUND

A.   Factual background[1]

Plaintiff Willie Reed ("Plaintiff" or "Mr. Reed") is an African American man who was employed by Defendant Riverboat Corporation of Mississippi ("Defendant") as a groundskeeper in the Maintenance Department at the Golden Nugget Hotel and Casino ("Golden Nugget") in Biloxi, Mississippi, from approximately January 2, 2018, until September 19, 2018.  Compl. [1] at 1.

Mr. Reed alleges that at some point during his employment at the Golden Nugget, he became aware that he was being assigned more labor-intensive tasks than white employees by his supervisor, Shawn Van Lancker ("Mr. Van Lackner"), and the Director of Facilities, Matt Newman ("Mr. Newman").  Pl. Ex. 1, Reed Dep. [56-1] at 18-19.  Specifically, he noticed that Brandon Lang ("Mr. Lang"), a white employee, was consistently receiving less labor-intensive work assignments.  *Id.* Mr. Van Lancker also prohibited other employees who had finished their own work from helping Mr. Reed complete his tasks, and he criticized Mr. Reed's work.  *Id.* at 19, 33-34.  Mr. Reed alleges that Mr. Lang did not face similar treatment.  *Id.* at 34.

On June 4, 2018, Mr. Van Lancker and Mr. Newman met with Mr. Reed and Ricky Johnson ("Mr. Johnson"), an African American non-management lead, and informed Mr. Reed that he would be responsible for cutting grass, trimming, weed eating, edging, and handling the trash.  *Id.* at 17-22.  It is undisputed that all of these tasks fell within Mr. Reed's job description.  *See, e.g.,* Def. Ex. 3, Job

---

[1] The facts are presented in the light most favorable to Mr. Reed, the nonmoving party.  *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 858 (5th Cir. 2010).

Description [54-3].  Following this meeting Mr. Reed went to Defendant's Human

Resources Department and filed a complaint of discriminatory treatment.  Pl. Ex. 1,

Reed Dep. [56-1] at 18-19.  Mr. Johnson also filed a discrimination complaint.  Pl.

Ex. 3, Johnson Dep. [56-3] at 13.

Mr. Reed alleges that the day after he filed this internal complaint, Mr. Van

Lancker and Mr. Newman increased his workload by having him and Mr. Johnson

clean an entire offsite property, despite the fact that only half of the property was

managed by Defendant.  Pl. Ex. 1, Reed Dep. [56-1] at 18-19, 24-25; Pl. Ex. 3,

Johnson Dep. [56-3] at 13.  However, also following Mr. Reed's filing of the internal

complaint, Mr. Newman was removed from day-to-day interactions with the

grounds crew.  Pl. Ex. 1, Reed Dep. [56-1] at 52.  Mr. Reed contends that this was

not an effective resolution of the problem because Mr. Newman could still issue

directives to the crew through Mr. Van Lancker.  *Id.*

On July 19, 2018, Mr. Van Lancker issued Mr. Reed a disciplinary notice for

failing to properly trim boxwood plants on July 12, 2018, and for mowing over trash

on July 13, 2018.  Def. Ex. 12, July 2018 Counseling [54-12] at 1.  Mr. Reed claims

that there was no factual basis for this discipline as he had not yet trimmed the

plants at the time Mr. Van Lancker took the photographs that served as the basis

for the notice.  Pl. Ex. 1, Reed Dep. [56-1] at 39-41.  While Mr. Reed does not deny

that he mowed over the trash, he maintains that this was only because he was

unable to see the trash prior to cutting over it.  *Id.*  Although Mr. Reed planned to

clean up the trash afterwards, Mr. Newman requested that he complete another

task before he was able to do so. *Id.* Mr. Reed contends that the picture used to support this disciplinary notice was taken after he left to finish the new task assigned by Mr. Newman. *Id.* In any event, Mr. Reed claims he picked up the trash by the end of the day. *Id.*

On August 9, 2018, Mr. Reed was disciplined by Mr. Van Lancker and Mr. Newman for attendance infractions. Def. Ex. 13, August 2018 Counseling [54-13] at 1. Mr. Reed complained to Human Resources that the attendance policy was not being equally enforced as between himself and Mr. Lang, Pl. Ex. 1, Reed Dep. [56-1] at 36, and Mr. Lang was subsequently issued disciplinary notices for attendance infractions, Def. Ex. 18, Utesch[2] Decl. [54-18] at 1-2.

On September 19, 2018, Mr. Reed submitted his resignation to Human Resources, explaining that he felt compelled to resign based upon the working environment. Def. Ex. 2, Resignation Letter [54-2]. He filed a charge with the Equal Employment Opportunity Commission ("EEOC") the same day. Pl. Ex. B, EEOC Compl. [1-2] at 1. Mr. Reed's EEOC charge claimed that during his employment he was discriminated against on the basis of his race and that he was retaliated against for complaining about discrimination. *Id.* The EEOC issued Plaintiff a Right to Sue Letter on September 25, 2018. Pl. Ex. C, Right to Sue [1-3] at 1.

---

[2] Stephanie Utesch was Defendant's Human Resource Director during the time of Mr. Reed's employment. Def. Ex. 18, Utesch Decl. [54-18] at 1.

B.    Procedural history

Plaintiff filed suit in this Court on December 21, 2018, alleging that while employed by Defendant he suffered from race discrimination, retaliation, and a hostile work environment in violation of 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e – 2000e-17.  Compl. [1] at 1; Resp. [56] at 24-25.  Mr. Reed further alleged that he was constructively discharged from his employment by Defendant.  Compl. [1] at 3.

Defendant has filed the instant Motion [54] for Summary Judgment, to which Plaintiff has filed a Response [56] and Defendant a Rebuttal [59].  Defendant argues that Mr. Reed's claims should be dismissed because he failed to exhaust his administrative remedies as to his constructive discharge claim, he cannot state a prima facie case of racial discrimination, and any retaliation Mr. Reed purportedly suffered was supported by a legitimate, non-retaliatory reason.  *See* Mem. in Supp. [55].

## II. DISCUSSION

A.    Summary judgment standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  If the movant carries this burden, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial."  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

To rebut a properly supported motion for summary judgment, the opposing party must show, with "significant probative evidence," that there exists a genuine issue of material fact. *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000). "A genuine dispute of material fact means that evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Royal v. CCC & R Tres Arboles, L.L.C.*, 736 F.3d 396, 400 (5th Cir. 2013) (quotation omitted). If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate. *Cutting Underwater Techs. USA, Inc. v. ENI U.S. Operating Co.*, 671 F.3d 512, 516 (5th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). In deciding whether summary judgment is appropriate, the Court views facts and inferences in the light most favorable to the nonmoving party. *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 858 (5th Cir. 2010).

B.    Legal standard under Title VII and 42 U.S.C. § 1981

When evaluating claims raised under both Title VII and Section 1981, courts "refer only to Title VII, because 'when used as parallel causes of action, Title VII and Section 1981 require the same proof to establish liability,' and 'it would be redundant to refer to both of them.'" *Harville v. City of Houston*, 945 F.3d 870, 875 n.10 (5th Cir. 2019) (quoting *Outley v. Luke & Assocs., Inc.*, 840 F.3d 212, 216 n.3 (5th Cir. 2016)).

Mr. Reed's claims rely upon circumstantial evidence and are therefore subject to the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Harville*, 945 F.3d at 874. Under that framework, a

plaintiff bears the initial burden of establishing the elements of the prima facie case of discrimination or retaliation.  *Id.* at 874-75.  Once established, the prima facie case creates a presumption of discrimination or retaliation and the burden shifts to the employer to articulate a legitimate, non-discriminatory or non-retaliatory reason for its action.  *Id.* at 875.  If the employer carries this burden of production, the burden shifts back to the plaintiff to "demonstrate that the employer's proffered reason is a pretext."  *Id.*

1.   <u>Plaintiff's hostile work environment claim</u>

"To prove a hostile work environment claim, a plaintiff must show that '(1) [he] belongs to a protected group; (2) [he] was subjected to unwelcome harassment; (3) the harassment complained of was based on race; (4) the harassment complained of affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action.'"  *Melvin v. Barr Roofing Co.*, 806 F. App'x 301, 308 (5th Cir. 2020); *see Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002).

Defendant contends that Mr. Reed's hostile work environment claim should be dismissed because he did not specifically plead it in the Complaint.  Rebuttal [59] at 11.  Under Federal Rule of Civil Procedure 8(a)(2), a plaintiff's complaint must contain "a short and plain statement of the claim showing that [he] is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  A plaintiff is not required to plead facts establishing each element of a prima facie case, but his complaint must give the defendant "fair notice of the basis for [his] claims."  *Melvin*, 806 F. App'x at 308 (citing *Swierkiewicz*

*v. Sorema N. A.*, 534 U.S. 506, 511-12, 514 (2002)).  The United States Supreme Court has cautioned that courts should not dismiss claims based upon an "imperfect statement of the legal theory."  *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014) (per curiam).

To plead a hostile work environment claim, "a plaintiff need not use the magic words 'hostile work environment . . . .'"  *Portis v. First Nat. Bank of New Albany*, 34 F.3d 325, 332 n.12 (5th Cir. 1994), as amended on denial of reh'g (Nov. 10, 1994) (citing *Boutros v. Canton Regional Transit Auth.*, 997 F.2d 198, 204 (6th Cir. 1993) (finding claim properly raised even though the words "hostile work environment" were not used)).  However, there must be sufficient information pleaded to place a defendant on notice that the claim is being raised.  *See Baig v. McDonald*, 749 F. App'x 238, 241 (5th Cir. 2018).  The Fifth Circuit has held that an allegation of continuous and frequent harassment is sufficient to put a defendant on notice that a plaintiff is advancing a hostile work environment legal theory.  *Melvin*, 806 F. App'x at 308.

Although Plaintiff did not use the words "hostile work environment" in the Complaint, he did allege harassment based upon his race that continued frequently throughout the duration of his employment.  *See* Compl. [1] at 2-3.  Based upon the facts alleged in the Complaint and the Fifth Circuit's guidance in *Melvin*, the Court finds that Plaintiff sufficiently pleaded a hostile work environment claim.  *See Melvin*, 806 F. App'x at 308.

Turning to the merits of Mr. Reed's hostile work environment claim, he

argues that he has stated a prima facie case because he and other African American employees were subjected to "more scrutiny, more discipline, and harsher working conditions," Resp. [56] at 24, and because white coworkers were prevented from helping him even when they expressed a desire to do so, *id.* at 25. Mr. Reed further contends that he was issued "three questionable disciplinary notices," *id.*, and that any doubt regarding whether the harassment was based upon his race can be resolved by looking to Mr. Newman's use of the phrase "useless n——"[3] which was overheard by another employee at an earlier time while Mr. Newman was working at a different casino, *id.* Defendant counters that this claim should be dismissed because Mr. Reed was not subject to racially offensive comments during the time he was employed at the Golden Nugget, Rebuttal [59] at 11, a fact which Mr. Reed does not dispute, Resp. [56] at 24-25.

A review of the competent summary judgment record in this case reveals that the racially offensive comment Mr. Newman is charged with making on one occasion was overheard by another employee while he was working with Mr. Newman at his previous employment at a different casino, the Boomtown Casino; the comment was not made during Mr. Newman's time at the Golden Nugget. Pl. Ex. 11, Morgan[4] Dep. [56-11] at 10. There is no evidence that Mr. Reed overheard this comment, that it was directed at him, or that he even knew this comment had

---

[3] There is no evidence in the record that Mr. Reed ever heard Mr. Newman use this epithet.

[4] Rodney D. Morgan Jr. worked under Mr. Newman's supervision while employed at Boomtown Casino and also at the Golden Nugget. Pl. Ex. 11, Morgan Dep. [56-11] at 4-5. Mr. Reed and Mr. Morgan's time at the Golden Nugget overlapped by about 4 months, although Mr. Morgan did not work in the grounds department. *Id.* at 9.

9

been made prior to conducting discovery in this case.  The relevant inquiry in this case is whether the working environment Mr. Reed experienced while he was employed with Defendant's grounds department at the Golden Nugget was hostile. Mr. Newman's comments while employed at a different time at a different casino, which were not directed at or overheard by Mr. Reed, do not relate to the environment Mr. Reed experienced at the Golden Nugget.  It is undisputed that the record is devoid of any evidence of racially offensive comments that Mr. Reed overheard, that he knew of, or that were directed at him during his employment with the Golden Nugget.

Turning to the elements of the prima facie case, Mr. Reed, as an African American male, belongs to a protected group.  *See* 42 U.S.C. § 2000e-2(a)(1). Second, he has alleged that he was subjected to harassment in that he was required to complete more labor-intensive tasks and faced unequal discipline.  Pl. Ex. 1, Reed Dep. [56-1] at 18-19.  Next, Mr. Reed maintains that he and other African American employees were made to work separately from Caucasian employees and that they were not permitted to work together.  Pl. Ex. 1, Pl. Dep. [56-1] at 15, 17-18. Construing the evidence in the light most favorable to Mr. Reed at the summary judgment stage, a reasonable juror might conclude that this was evidence of a racial basis for the division of work assignments.

However, the fourth element of a hostile work environment claim requires the Court to consider whether the harassment complained of "affected a term, condition, or privilege of employment."  *Harvill v. Westward Commc'ns, L.L.C.*, 433

F.3d 428, 434 (5th Cir. 2005) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S.

57, 67 (1986)) (alteration omitted).  To satisfy this element, the harassment must be

"sufficiently severe or pervasive 'to alter the conditions of the victim's employment

and create an abusive working environment.'"  *Id.*  A plaintiff "must subjectively

perceive the harassment as sufficiently severe or pervasive, and this subjective

perception must be objectively reasonable."  *Frank v. Xerox Corp.*, 347 F.3d 130, 138

(5th Cir. 2003).  Making this determination requires consideration of "the frequency

of the discriminatory conduct; its severity; whether it is physically threatening or

humiliating, or a mere offensive utterance; and whether it unreasonably interferes

with an employee's work performance."  *Walker v. Thompson*, 214 F.3d 615, 625

(5th Cir. 2000), abrogated on other grounds by *Burlington N. & Santa Fe Ry. v.

White*, 548 U.S. 53, 68 (2006).

Although Mr. Reed argues that the tasks he was required to complete were

more labor intensive than those of his white coworkers, he does not assert that he

was asked to do anything that fell outside of his job description.  Resp. [56] at 24-25;

Pl. Ex. 1, Pl. Dep. [56-1] at 9, 14-16.  Indeed, he acknowledges that all of these tasks

were within the scope of his job duties.  Pl. Ex. 1, Pl. Dep. [56-1] at 9, 14-16.  Even

taking the facts and construing all inferences in Mr. Reed's favor, the terms and

conditions of his employment were not altered by being required to perform these

assignments as there can be no factual dispute that all fell within his job

description as it was originally presented to him.  Def. Ex. 3, Job Description [54-3].

Turning to the purportedly unequal discipline Mr. Reed received, under Fifth

Circuit precedent three instances of disciplinary write ups, even if unjustified, do not rise to the level of the frequent, severe, or unreasonable harassment necessary to create a hostile work environment. *Kang v. Bd. of Supervisors*, 75 F. App'x 974, 975-76 (5th Cir. 2003) (holding that a poor performance evaluation, an unauthorized write up, less-than-average pay, failing to nominate the plaintiff for a teaching award, even though he had been nominated in previous years, and "unfairly and unjustly" criticizing him was not severe and pervasive); *see Bryan v. Chertoff*, 217 F. App'x 289, 294 (5th Cir. 2007) (finding a supervisor's use of harsh language or yelling at a plaintiff and removing items from his workspace "cannot support a hostile work environment claim."); *Ellis v. Principi*, 246 F. App'x 867, 871-72 (5th Cir. 2007) (determining that less favorable work assignments, disparate treatment in leave and late policies, close monitoring of time and attendance, and racial comments were not severe or pervasive enough to state a prima facie hostile work environment claim).

Because Mr. Reed has not created a genuine dispute of material fact as to whether he experienced harassment that was severe or that affected "a term, condition, or privilege of employment," his hostile work environment claim cannot withstand summary judgment.

2.    Plaintiff's constructive discharge claim

Mr. Reed claims that he was constructively discharged when Mr. Van Lancker and Mr. Newman assigned him degrading work and harassed him in a way that was calculated to encourage his resignation.  Mem. in Opp'n [56] at 14.

Defendant claims that Mr. Reed failed to exhaust his administrative remedies with respect to this claim, entitling it to summary judgment.  Mem. in Supp. 13-14.

Title VII plaintiffs are required to exhaust their administrative remedies with the EEOC within 180 days of the alleged discrimination prior to bringing a suit in federal court.  42 U.S.C. § 2000e-5(e)(1).  The Fifth Circuit has held that Title VII's exhaustion requirement is not jurisdictional, *Davis v. Fort Bend Cty.*, 893 F.3d 300, 306 (5th Cir. 2018), however, the failure to exhaust administrative remedies is an affirmative defense, *id.* at 307.  Where a defendant raises this defense, a plaintiff may overcome it by asserting waiver or estoppel to excuse the failure to exhaust.  *Stroy v. Gibson*, 896 F.3d 693, 698 (5th Cir. 2018).  Where a plaintiff fails to offer any justification for his failure to exhaust, dismissal is proper. *Id.*

Defendant argues that Mr. Reed failed to exhaust his administrative remedies because he failed to include a constructive discharge claim in his EEOC charge.  An. [8] at 6; Mem. in Supp. [55] at 13.  Plaintiff has not contended that he exhausted his administrative remedies on this claim, nor has he offered any justification for failing to do so.  *See* Mem. in Opp'n [56] at 13-16.

A review of Plaintiff's EEOC charge plainly reveals that it did not include a claim for constructive discharge.  *See* Pl. Ex. 2, EEOC Compl. [1-2].  In fact, although the charge was filed the same day his resignation letter was notarized, Mr. Reed did not mention anywhere in his EEOC charge that he had left his employment.  *See id.*; Def. Ex. 2, Resignation Letter [54-2].  The record does not

reveal whether Mr. Reed made any effort to later amend his EEOC charge to include this claim.  Because it is clear Plaintiff failed to exhaust his administrative remedies with regard to his Title VII constructive discharge claim, and because he has not argued waiver, estoppel, or any other defense, his Title VII constructive discharge claim should be dismissed without prejudice.

However, 42 U.S.C. § 1981 does not require administrative exhaustion prior to bringing a claim, so the Court will evaluate Mr. Reed's constructive discharge claim on its merits pursuant to 42 U.S.C. § 1981.  Mem. in Supp. [55] at 13-14. Plaintiff premises his constructive discharge theory upon the hostile work environment he allegedly faced while he was employed with Defendant.  Compl. [1] at 2-3; Mem. in Opp'n [56] at 13-16.  Specifically, he asserts that being assigned more labor-intensive tasks than his white counterparts, white employees not being permitted to assist him in his duties, the additional and purportedly unnecessary assignments he was given following his internal complaint, and the three counseling notices he was issued after he made an internal complaint, would have made a reasonable employee feel compelled to resign.  *See* Mem. in Opp'n [56] at 13-16.

A plaintiff who advances a hostile-environment constructive discharge claim "must show working conditions so intolerable that a reasonable person would have felt compelled to resign." *Pa. State Police v. Suders*, 124 S. Ct. 2342, 2354 (2004). The following types of events can constitute relevant evidence leading a reasonable employee to feel compelled to resign:

> (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement [or continued employment on terms less favorable than the employee's former status].

*Lauderdale v. Tex. Dep't of Criminal Justice*, 512 F.3d 157, 167 (5th Cir. 2007) (alteration in original) (quoting *Brown v. Bunge Corp.*, 207 F.3d 776, 782 (5th Cir. 2000)).  A plaintiff is not required to demonstrate that the employer specifically intended to force his resignation, but he must show an even greater degree of harassment than that required to prove a hostile work environment claim.  *Id.*; *Tucker v. United Parcel Serv., Inc.*, 734 F. App'x 937, 943 (5th Cir. 2018); *Gordon v. Acosta Sales & Mktg., Inc.*, 622 F. App'x 426, 431 (5th Cir. 2015).  This requires a showing of both discrimination and some combination of the foregoing aggravating factors.  *Brown v. Kinney Shoe Co.*, 237 F.3d 556, 566 (5th Cir. 2001).

As the Court concluded earlier in Section II(B)(1), Plaintiff's hostile work environment claim cannot survive summary judgment.  As such, his constructive discharge claim meets a similar fate.  *See Lauderdale*, 512 F.3d at 167.  To the extent Mr. Reed alleges that he received additional and unnecessary work assignments, a reasonable jury could not conclude that two instances of additional assignments in June 2018 would make working conditions so intolerable as to compel a reasonable employee to resign three months later in September, even when coupled with the other evidence Mr. Reed has presented.  This is particularly true where, as here, it is undisputed that these tasks fell within Mr. Reed's job description.  Summary judgment should be granted on Mr. Reed's constructive

discharge claim pursuant to 42 U.S.C. § 1981.

3.      Plaintiff's race discrimination claim

Plaintiff alleges that he was discriminated against based upon his race because he was singled out and assigned all of the grounds crew's manual labor, which he claims constituted a disproportionate share of the department's work, and because he was disciplined for infractions for which his white coworkers were not. Compl. [1] at 2-3.

To establish a prima facie case of disparate treatment race discrimination, a plaintiff must establish that he: (1) was a member of a protected class; (2) was qualified for the position that he held; (3) was subjected to an adverse employment action; and (4) was treated less favorably than other similarity-situated employees who were not in his protected class. *Harville*, 945 F.3d at 875. Defendant argues that Mr. Reed has "not sufficiently shown that 'he was subjected to less favorable treatment than employees not in the protected class.'" *Id.* The Court has thoroughly reviewed the summary judgment record and cannot identify any adverse employment action to which Mr. Reed was subjected within the meaning of Title VII.

The Fifth Circuit has held that its "precedent recognizing only 'ultimate employment decisions' as actionable adverse employment actions remains controlling for Title VII *discrimination* claims." *McCoy v. City of Shreveport*, 492 F.3d 551, 560 (5th Cir. 2007) (emphasis in original). A plaintiff claiming discrimination under Title VII must show that he was subjected to an ultimate

employment decision, such as "hiring, granting leave, discharging, promoting, or compensating," to establish a prima facie case of discrimination. *Id.* at 559.

Mr. Reed maintains that he was assigned disproportionately more labor-intensive tasks in comparison to non-African American grounds department employees, specifically Mr. Lang, and that he was subjected to discipline to which non-African American employees were not. Compl. [1] at 2; Mem. in Opp'n [56] at 17; Pl. Ex. 1, Reed Dep. [56-1] at 32. Beyond his claim for constructive discharge, which is subject to dismissal, Mr. Reed alleges no other adverse employment action. *See* Compl. [1]; Mem. in Opp'n [56].

The Fifth Circuit has held that a disproportionate workload does not constitute an adverse employment action for purposes of a Title VII discrimination claim because it does not rise to the level of an ultimate employment decision. *See Hart v. Life Care Ctr. of Plano*, 243 F. App'x 816, 818 (5th Cir. 2007) (per curiam) (finding that being assigned more difficult tasks than Hispanic coworkers did not constitute adverse employment action); *Benningfield v. City of Houston*, 157 F.3d 369, 376-77 (5th Cir. 1998) (holding that being assigned an unusually heavy workload is an administrative matter and not an adverse employment action). Similarly, where a disciplinary warning does not result in any type of reduced wages, a termination, a layoff, or any other ultimate employment decision, it is insufficient to constitute an adverse employment action. *See Thomas v. Texas Dep't of Criminal Justice*, 220 F.3d 389, 394 n.2 (5th Cir. 2000) (finding two instances of formal discipline did not constitute an adverse employment action); *Liddell v.*

17

*Northrop Grumman Shipbuilding, Inc.*, 836 F. Supp. 2d 443, 457 (S.D. Miss. 2011) (holding that unless discipline results in some kind of ultimate employment decision, it does not constitute an adverse employment action).

Because Fifth Circuit precedent is clear that Mr. Reed did not experience an adverse employment action, he cannot make out a prima facie case on his race discrimination claim.

4.      Plaintiff's retaliation claim

Plaintiff next asserts that he was retaliated against after he internally reported what he believed was discrimination to Defendant's Human Resources Department, in that his workload was subsequently increased and he received unwarranted reprimands.  Compl. [1] at 2-3.  To establish a prima facie case of retaliation under Title VII, a plaintiff "must establish that: (1) he participated in an activity protected by Title VII; (2) his employer took an adverse employment action against him; and (3) a causal connection exists between the protected activity and the adverse employment action."  *Hague v. Univ. of Texas Health Sci. Ctr. at San Antonio*, 560 F. App'x 328, 333 (5th Cir. 2014) (quoting *McCoy*, 492 F.3d at 556-57).

In order to establish an adverse employment action in a retaliation case, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  *Burlington N.*, 548 U.S. at 68 (internal quotation omitted).  This standard is less stringent than that used in discrimination cases, and actions short of ultimate

employment decisions can suffice to state a prima facie case. *See McCoy*, 492 F.3d at 560. Defendant concedes that for purposes of summary judgment, Mr. Reed can establish a prima facie case of retaliation. Mem. in Supp. [55] at 22.

Once a plaintiff states a prima facie case of retaliation, the burden shifts to the employer to articulate a legitimate, non-retaliatory reason for its actions. *See Harville*, 945 F.3d at 875. Defendant contends that after Mr. Reed filed his internal complaint, his workload continued to consist solely of his groundskeeping duties, which it was permitted to assign him, and that his counseling notices were legitimately issued based upon his poor work performance and his tardiness. Mem. in Supp. [55] at 22-23. Mr. Reed acknowledges that on their face these would constitute legitimate, non-retaliatory reasons for purposes of a retaliation claim. *See* Mem. in Opp'n [56] at 26. Thus, the burden shifts back to Mr. Reed to demonstrate that these reasons were a pretext for Defendant's retaliatory motive. *See Harville*, 945 F.3d at 875.

An employee establishes pretext by showing that the adverse action would not have occurred "but for" the employer's retaliatory reason for its action. *Bostock v. Clayton Cty.*, 140 S. Ct. 1731, 1739 (2020); *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 343 (2013). To avoid summary judgment, a plaintiff must show "a conflict in substantial evidence" on the question of whether the employer would not have taken the action "but for" the protected activity. *Hague*, 560 F. App'x at 333. Standing alone, close timing between a protected activity and an adverse action is not "substantial evidence" sufficient to establish but-for causation. *Coleman v.*

*Jason Pharm.*, 540 F. App'x 302, 306 n.1 (5th Cir. 2013) (citing *McCoy*, 492 F.3d at 562). Temporal proximity must be coupled with other evidence tending to reveal a retaliatory motive. *Id.*

Plaintiff asserts that a retaliatory motive led to the increase in his work duties because the day after he made his complaint, he and Mr. Johnson were sent off-site to clean up a property which Defendant only partially controlled. Mem. in Opp'n [56] at 26; Pl. Ex. 1, Reed Dep. [56-1] at 18-19, 24-25. While Defendant argues that it is inappropriate to consider only the temporal relationship between Mr. Reed's internal complaint and the assignment, it is noteworthy that not only does Plaintiff allege that this additional work was assigned in temporally close proximity to his internal complaint, but that it was also at least partially unnecessary because the property was not entirely controlled by Defendant. *See* Mem. in Opp'n [56] at 26.

Mr. Reed also argues that there was no factual basis to support the disciplinary notice he received on July 19, 2018, because he had not yet trimmed the boxwoods when the pictures were taken, and his failure to pick up the trash prior to cutting the grass was excusable under the circumstances. Pl. Ex. 1, Reed Dep. [56-1] at 39-41. Mr. Reed claims he corrected both issues prior to leaving work that day. *Id.* Defendants counter that Plaintiff cannot show pretext because there were legitimate reasons to issue the counseling notices, and timing alone is insufficient to establish pretext. Mem. in Supp. [55] at 23. Viewing all facts and conflicts in the evidence in the light most favorable to Mr. Reed, as the Court must at this stage,

there remain questions of fact for resolution by a jury regarding whether the temporal proximity between Mr. Reed's complaint and Defendant's actions in assigning Mr. Reed additional, purportedly unnecessary work and in also disciplining him were a pretext for retaliation.

Because Mr. Reed has shown the existence of a genuine dispute of material fact as to whether he experienced retaliation in response to his filing an internal complaint, summary judgment should be denied on this claim.

### III. CONCLUSION

As Mr. Reed has shown the existence of a question of material fact for resolution at trial regarding his claim for retaliation, summary judgment should be denied as to this claim.  Because Mr. Reed has not shown the existence of a question of material fact regarding his claims for constructive discharge, discrimination, and hostile work environment, Defendant's Motion should be granted as to these claims and they will be dismissed.  To the extent the Court has not specifically addressed any of the parties' remaining arguments, it has considered them and determined that they would not alter the result.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, Defendant Riverboat Corporation of Mississippi's Motion [54] for Summary Judgment is **GRANTED IN PART**, as to Plaintiff Willie Reed's claims under Title VII and 42 U.S.C. § 1981 for constructive discharge, discrimination, and hostile work environment, and **DENIED IN PART**, as to Plaintiff Willie Reed's claim for retaliation.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, Plaintiff Willie Reed's claims for constructive discharge under 42 U.S.C. § 1981, discrimination under Title VII and 42 U.S.C. § 1981, and hostile work environment under Title VII and 42 U.S.C. § 1981 are **DISMISSED WITH PREJUDICE.**  Plaintiff Willie Reed's claim for constructive discharge under Title VII is **DISMISSED WITHOUT PREJUDICE**. Plaintiff Willie Reed's claims for retaliation under Title VII and 42 U.S.C. § 1981 will proceed.

**SO ORDERED AND ADJUDGED**, this the 16th day of July, 2020.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE